UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and Fulton

IN RE: JARED R. JENKINS

     Record No. 1718-22-3

                                                  MEMORANDUM OPINION[*]

IN RE: JARED R. JENKINS                         PER CURIAM

     Record No. 1719-22-3                      OCTOBER 17, 2023

FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

(Jared R. Jenkins; JenkinsEsq, PLLC, on briefs), *pro se*.

In this combined opinion we consider whether the Rockbridge County Circuit Court

("circuit court") erred in revoking Jared R. Jenkins's ("Jenkins") privilege to appear as counsel in

that court (appealed as Record No. 1718-22-3), and in holding Jenkins in contempt (appealed as

Record No. 1719-22-3). After examining the briefs and records in these cases, the panel

unanimously holds that oral argument is unnecessary because, "the dispositive issue or issues have

been authoritatively decided, and the appellant has not argued that the case law should be

overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b). For the

following reasons, we affirm the circuit court's judgment.

## I. BACKGROUND

In April 2021, Joanne D. Moore ("Moore") signed a contract "on behalf of" the Dudley

Land Trust ("Trust") to sell two real estate parcels to Christopher Irvine ("Irvine"). On December

17, 2021, Irvine filed a complaint seeking specific performance of the sales contract. The complaint

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

alleged that the Trust had no serving trustee, but that under an order in prior litigation, Moore had sole "power to make decisions regarding the sale" of the real estate at issue.[1]  Given that the Trust had no serving trustee, Irvine requested that the circuit court appoint a special commissioner to execute a deed conveying the real estate to him.

On December 22, 2021, the circuit court entered an order appointing a special commissioner to "close the transaction."  On January 18, 2022, Jenkins filed a motion seeking leave for seven "qualified beneficiaries" of the Trust to intervene.  The motion alleged that Irvine, Moore, and the circuit court "ignored multiple procedural safeguards designed to insure [sic] the property of a Trust is not stolen."  The motion stated that the intervenors sought "an explanation of the current posture of this case, an explanation of the authority supporting the actions taken, and reconsideration of those actions."  Finally, the motion contended, "[i]f these actions are allowed to stand, the citizens of Rockbridge County will rightly question the rule of law."

Irvine opposed intervention and asserted that the beneficiaries were not "proper parties" to the specific performance suit because, under the binding order from the prior litigation, Moore was the "only person qualified to make decisions regarding disposition" of the Trust's property.  Irvine argued that the beneficiaries were not "necessary part[ies]."  Consequently, he contended, there was "no basis" upon which to grant leave to intervene.

Irvine's counsel subsequently moved the circuit court to sanction Jenkins under Code § 8.01-271.1 for various statements he made in the motion to intervene.  By order of June 21, 2022, the circuit court found that "several of the allegations" in the motion to intervene violated Code § 8.01-271.1 and ordered Jenkins to pay $4,000 in attorney fees incurred by Irvine in opposing the intervention and in moving for sanctions.

---

[1] The record does not contain a copy of the land trust agreement.

Thereafter, Irvine moved for a rule to show cause because Jenkins had failed to pay the attorney fees mandated by the June 21, 2022 order. The circuit court subsequently issued the rule to show cause, and in a response filed by Jenkins on September 29, 2022, he conceded that he had not paid the attorney fees. Further, Jenkins asserted that the June 21, 2022 order was void ab initio because the trustee had not been made a party to the original specific performance suit and, as a result, the circuit court lacked subject matter jurisdiction. Jenkins did not limit his response to this argument; he also alleged that the case was "rife with unethical conduct" and that the circuit court's actions "would harm the public trust in the fairness of the judiciary." Jenkins further insinuated that the circuit court and others involved in the case "believed that they were above the law and could achieve their desired ends without caring whether their manner of doing so was legal or not." He also contended that the circuit court apparently "felt this unethical collusion would be legal and beyond question" and that "it is reasonable to ask to what other lengths and for what other purposes the [circuit court] has wrongfully attempted or will wrongfully attempt to use its self-assumed power." Finally, Jenkins maintained that the circuit court was "[j]eopardizing the public trust in the judiciary by wrongfully and unethically pursuing the course of action taken in [the land trust] case." He described the circuit court's behavior as "dangerous" and asserted that, "[i]n a just legal system, calling attention to this fact would be heard, considered, and addressed—not sanctioned."

At an October 6, 2022 hearing regarding the rule to show cause, Irvine's counsel confirmed that Jenkins had not paid the attorney fees as previously ordered. Jenkins presented no evidence or argument and relied solely on the pleading he submitted in response to the show cause order. The circuit court, by order dated October 12, 2022, found that Jenkins "willfully and intentionally failed to comply" with the circuit court's June 21, 2022 order. The circuit court then found Jenkins in contempt, ordered Jenkins to serve 60 days in jail, fined him $200 per day, and ordered him to pay an additional $800 in attorney fees to Irvine's counsel as a result of the rule to show cause

proceedings. The circuit court permitted Jenkins to purge the contempt by complying with the June 21, 2022 order as well as the October 12, 2022 order. Jenkins timely noted an appeal of the October 12, 2022 order.

Also, at the October 6, 2022, hearing on the rule to show cause, the circuit court found that the September 29, 2022 response was "a diatribe against the court" with "allegations and insinuations that the court is corrupt and has acted unlawfully." The circuit court then issued another rule to show cause why Jenkins's privilege to appear as counsel of record should not be revoked. The circuit court held a hearing on this show cause on October 20, 2022, at which the circuit court found that the response was "not a rash outburst in court" but a "deliberate" and "thoughtful writing that must have involved considerable time" on Jenkins's part. It also found that the response was an "inappropriate" way for Jenkins "to express disagreement with the ruling of the court."

The circuit court asked Jenkins to explain why he should retain his privilege to appear as counsel of record in the Rockbridge County Circuit Court. In response, Jenkins first attempted to discuss unrelated matters. The circuit court made clear that the hearing's sole purpose was to address Jenkins's ability to appear as counsel of record before the court. Jenkins then stated that he wanted to "see what the public needs to be protected from" and read aloud portions of the response. Jenkins argued that each part he read aloud was true or correctly reflected what had happened but did not produce witnesses or documentary evidence to support his assertions. He maintained that he was trying to demonstrate that the "statements in this [response] are completely supported by the record and reasonable inferences therefrom" and "the public can feel confident and comfortable with" Jenkins practicing before the circuit court.

After the hearing, the circuit court held that the content of the September 29, 2022 response prepared and submitted by Jenkins "constitute[d] misconduct by an officer of" the court.

- 4 -

Specifically, the circuit court held that the allegations that the circuit court "unlawfully colluded with others in rulings adverse to the wishes of [Jenkins's] clients" were "not appropriate methods" for Jenkins to "note objections to" the circuit court's rulings and orders. Finally, the circuit court held that Jenkins's response "raise[d] substantial and serious questions" about his fitness to practice in the circuit court. As a result, by order entered on October 21, 2022, the circuit court revoked Jenkins's privilege to appear as counsel of record in the Rockbridge County Circuit Court. The order provided that beginning 90 days after the October 6, 2022 hearing, Jenkins could petition the circuit court to restore his privilege to appear as counsel of record. Jenkins appealed from the order.

## II. ANALYSIS

### A. *Standard of Review*

We review a circuit court's decision imposing sanctions for abuse of discretion and will not reverse that decision unless the circuit court abused its discretion in "its decision to sanction the litigant" or the "choice of the particular sanction employed." *Winters v. Winters*, 73 Va. App. 581, 589 (2021) (quoting *Switzer v. Switzer*, 273 Va. 326, 331 (2007)). "An abuse of discretion occurs 'only "when reasonable jurists could not differ"' as to the proper decision." *Carrithers v. Harrah*, 63 Va. App. 641, 653 (2014) (quoting *Brandau v. Brandau*, 52 Va. App. 632, 641 (2008)). "This highly deferential standard of review, of course, does not 'simply mean that a circuit court may do whatever pleases it.'" *Id.* (quoting *Shebelskie v. Brown*, 287 Va. 18, 26 (2014)). "It does mean that, for some decisions, 'conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable.'" *Id.* (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

### B. *The circuit court did not abuse its discretion when it revoked Jenkins's right to appear as counsel.*

On appeal, Jenkins argues that the circuit court revoked his privilege to appear as counsel of record after "taking offense" at some of the arguments Jenkins raised in the land trust case. Jenkins

quotes the September 29, 2022 response and maintains that the circuit court's actions in the underlying litigation "raise[d] the concern that the actions taken would harm the public trust in the fairness of the judiciary." Continuing, Jenkins further asserts that "it is reasonable to ask to what other lengths and for what other purposes the [circuit court] has wrongfully attempted or will wrongfully attempt to use its self-assumed power." Jenkins also contends that "[i]gnoring the laws . . . undermines any confidence" that citizens can have in the rule of law and that the circuit court "[j]eopardiz[ed] the public trust in the judiciary by wrongfully and unethically" acting in the underlying litigation. Jenkins concludes by arguing that it is not he from whom the public needs protection, but "judges who ignore the law for the direct benefit of family members of former judges," such as the plaintiff in the land trust case, whom he asserts is the "brother of" a former judge of the circuit court. We disagree.

Courts have "inherent power to supervise the conduct of attorneys practicing before them and to discipline any attorney who engages in misconduct." *In re Moseley*, 273 Va. 688, 697 (2007) (quoting *Nusbaum v. Berlin*, 273 Va. 385, 399 (2007)). That inherent power includes the power "to suspend or annul the license of an attorney practicing in the particular court." *Id.* at 697-98 (quoting *Nusbaum*, 273 Va. at 399).

Here, Jenkins did not present any evidence to support his allegations in the September 29, 2022 response that the circuit court had engaged in "unethical collusion," "believed that [it was] above the law," and did not "car[e] whether" its actions were "legal or not." The judiciary "is uniquely dependent upon the trust of the people for the effective performance of its work" and "especially vulnerable to unfounded attacks that undermine public confidence in its integrity." *Anthony v. Va. State Bar ex rel. Ninth Dist. Comm.*, 270 Va. 601, 610 (2005). Therefore, "[r]eckless attacks by lawyers are especially damaging." *Id.*

Jenkins's unfounded attacks against the integrity of the circuit court constituted misconduct for which the circuit court was permitted to discipline him. *See In re Moseley*, 273 Va. at 697 (stating that the "inherent power" of courts includes the power to "discipline any attorney who engages in misconduct" while practicing before them (quoting *Nusbaum*, 273 Va. at 399)); *Anthony*, 270 Va. at 609 (affirming trial court's finding of misconduct in attorney's disparaging statements about the integrity of "a number of judges" that he made with "reckless disregard of their truth or falsity" when attorney conceded that his statements "were based only upon anonymous telephone calls, an anonymous letter, and 'the underlying record'").

The permissible range of discipline for Jenkins's misconduct included "suspend[ing] or annul[ling]" his license to practice in the circuit court. *In re Moseley*, 273 Va. at 697-98 (quoting *Nusbaum*, 273 Va. at 399); *see Williams & Connolly, L.L.P. v. People for Ethical Treatment of Animals, Inc.*, 273 Va. 498, 511, 522 (2007) (holding that a circuit court did not abuse its discretion by revoking an attorney's *pro hac vice* admission for filing pleadings that alleged a judge "'[v]iolated [h]is [e]thical [o]bligations,' 'ignored his ethical responsibilities,' and 'acted directly counter to [those ethical responsibilities]'" (alterations in original)).

When a circuit court "has a range of choice" in deciding whether to sanction an attorney, "its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Carrithers*, 63 Va. App. at 653 (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). "We apply this 'bell-shaped curve of reasonability' based on our 'venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" *Id.* at 654 (quoting *Hamad*, 61 Va. App. at 607). Given Jenkins's numerous allegations accusing the circuit court of unethical and illegal behavior and his failure to support those allegations with proof, the circuit court did not abuse its discretion when it suspended Jenkins's privilege to appear as counsel of record before the court.

C. *The circuit court did not abuse its discretion when it sentenced Jenkins to 60 days in jail and ordered Jenkins to pay opposing attorneys fees.*

Jenkins argues that the circuit court lacked jurisdiction over the entire case and therefore the order finding him in contempt is void ab initio. We disagree.

Jenkins argues that a trustee was a necessary party in this action concerning a land trust. As there was no trustee, he argues the circuit court lacked jurisdiction and could not find him in contempt. Whether or not a trustee was a necessary party to the action, Jenkins's argument is in direct contradiction to clearly settled law. In *Michael E. Siska Revocable Trust v. Milestone Development, LLC*, 282 Va. 169, 181 (2011), the Supreme Court explored the relationship of the necessary party doctrine and subject matter jurisdiction at length, unequivocally concluding, "the necessary party doctrine does not implicate subject matter jurisdiction." Since the circuit court did have subject matter jurisdiction, its order of contempt was not void ab initio. Jenkins does not contest the finding of contempt on its merits,[2] and we cannot find that the circuit court abused its discretion in finding Jenkins in contempt upon his failure to pay the previously ordered sanctions.

---

[2] Jenkins also challenges the circuit court's December 22, 2021 order appointing a special commissioner to convey the real estate to Irvine. This Court has appellate jurisdiction over "any final judgment, order, or decree of a circuit court in a civil matter," Code § 17.1-405(A)(3), and any "interlocutory decree or order" under Code § 8.01-267.8 or "involving an equitable claim in which the decree or order (i) requires money to be paid or the possession or title of property to be changed or (ii) adjudicates the principles of a cause." Code § 17.1-405(A)(4), (5).

"A final order or decree for the purposes of Rule 1:1 'is one which disposes of the whole subject, gives all the relief contemplated . . . and leaves nothing to be done in the cause save to superintend ministerially the execution of the order.'" *Friedman v. Smith*, 68 Va. App. 529, 538 (2018) (alteration in original) (quoting *de Haan v. de Haan*, 54 Va. App. 428, 436-37 (2009)). "[A]n order that 'retains jurisdiction to reconsider the judgment or to address other matters still pending' is ordinarily not a final order." *Id.* (quoting *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 561 (2002)). "Thus, a 'decree which leaves anything in the cause to be done by the court is interlocutory,' rather than final, in nature." *Id.* (quoting *Prizzia v. Prizzia*, 45 Va. App. 280, 285 (2005)). The challenged order plainly did not dispose of the whole subject or give all the relief contemplated because it did not appoint a trustee to receive the funds or address how the proceeds of the sale were to be distributed after the special commissioner deposited them with the circuit court; thus, it is not a final order.

Furthermore, the challenged order does not implicate Code § 8.01-267.8, which concerns consolidated trials, or involve an equitable claim. "Specific performance is an equitable

- 8 -

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*

---

*remedy.*" *Denton v. Browntown Valley Assocs., Inc.*, 294 Va. 76, 82 (2017) (emphasis added). Therefore, the challenged order is not an appealable interlocutory order, and we are without jurisdiction to consider Jenkins's challenge to the December 22, 2021 order.