COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges Petty, Russell and Malveaux
Argued by videoconference


ROMARIO BAILEY

                                                    OPINION BY
v.        Record No. 0182-20-2          JUDGE WESLEY G. RUSSELL, JR.
                                                    JUNE 15, 2021
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

John I. Jones, IV (John Jones Law, PLC, on brief), for appellant.

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


        The circuit court convicted Romario Bailey of assault and battery.  On appeal, Bailey

argues that the circuit court abused its discretion by denying his "motion for a continuance

and . . . subsequent motion to reconsider that denial."  For the reasons stated below, we affirm

the judgment of the circuit court.

BACKGROUND

        We state the facts in the light most favorable to the Commonwealth, the prevailing party

below.  Gerald v. Commonwealth, 295 Va. 469, 472 (2018).  So viewed, the evidence establishes

that, on August 21, 2019, the Chesterfield General District Court convicted Bailey, representing

himself *pro se*, of assault and battery.

        Having been convicted, Bailey sought to perfect an appeal to the circuit court.  On

August 26, 2019, he filed a notice of appeal.  The notice of appeal informed Bailey that his trial

in the circuit court would be held on January 3, 2020.  The notice, which Bailey signed, also

advised Bailey that he was required to

> [p]romptly communicate with the Clerk of the Circuit Court . . .
> concerning the *subpoenaing of witnesses . . . , concerning your*
> *right of representation by a lawyer if you do not have a lawyer*,
> and, if you are appealing a conviction, if you wish to request a jury
> trial. *If your case is scheduled for trial, you MUST be present and*
> *ready for trial at the "date and time of appearance" shown above.*

(Italics added).

On the scheduled trial date of January 3, 2020, Bailey appeared in the circuit court with retained counsel. At that time, counsel requested a continuance because "there are two necessary witnesses I need to be present, and they're not here, and I can't go forward without them." The Commonwealth objected, claiming that, from the notice of appeal he had signed and filed, Bailey was aware that he needed to be prepared for trial on January 3, 2020. The Commonwealth explained that it was prepared to go forward and that both the victim and a police officer who had been subpoenaed as a witness for the Commonwealth were present for the trial. The Commonwealth argued that if Bailey had "an issue with lawyer representation and witnesses, he needed to get it straight before today, and this is the trial date." In response, Bailey's counsel stated that he had been retained by Bailey three days prior and needed more time to subpoena witnesses.[1] Neither counsel nor Bailey asserted that a failure to grant the continuance effectively would deny him his Sixth Amendment right to counsel; in fact, neither the Sixth Amendment nor the right to counsel were mentioned.

Bailey, under oath in response to questions posed to him by the circuit court, testified that he had tried to retain a lawyer in August. He explained that due to a need to address the "total loss" of his car, which he needed to get to and from work, he spent the money that he had planned to use to pay a lawyer. He claimed that the car expense left him unable to pay that

---

[1] From the record, it does not appear that Bailey or his counsel filed a written motion for a continuance or otherwise notified the circuit court or the Commonwealth of Bailey's intent to request a continuance until the morning of trial.

lawyer's retainer fee and that by the time he had saved enough money for the attorney, the lawyer he had planned to hire was unavailable to represent Bailey because he already "had a court date," on January 3, 2020. At that time, Bailey retained his then trial counsel.

The circuit court "respectfully denied" the motion to continue the trial to another day. However, the circuit court noted that it had a lengthy docket that day and moved Bailey's case to the end of the docket to allow Bailey and counsel additional time to prepare. When the motion was denied, Bailey's counsel requested the opportunity to proffer for the record the expected testimony of the two witnesses he had referenced in seeking the continuance. The circuit court noted that it would allow counsel to make the proffer at the appropriate time.

When the case was recalled later that day, Bailey entered a plea of not guilty. The circuit court then proceeded to ask a series of questions as to whether Bailey understood his plea. Among other things, the circuit court asked Bailey if he had an opportunity to speak with his lawyer about the charge against him, including any defenses, and whether he was prepared "to go forward today[.]" Bailey responded "Yes, sir[]" to both questions and indicated that he had answered all of the circuit court's questions truthfully. The circuit court accepted Bailey's plea of not guilty, and the case proceeded to trial.

Cheyenne Mclemore was the first witness called by the Commonwealth. She testified that on June 2, 2019, Bailey, whom she characterized as an "associate," and another man came to her apartment in Chesterfield County. Mclemore, who suffered from vision problems, said she did not know Bailey, but was able to identify Bailey in court by his voice.[2] Mclemore testified that Bailey had alcohol with him and directed her to come outside into the hallway. When she did, Bailey told her that he "wanted" her and that they were not "cool no more[.]" Bailey then

_____

[2] On motion of the Commonwealth, Bailey volunteered his identity in court without objection after being asked by the circuit court to give a voice exemplar.

punched her in the face twice with a closed fist, knocking off her glasses. Mclemore screamed, and Bailey grabbed her, but he let her go before police arrived. Mclemore denied ever having a romantic relationship with Bailey and specifically denied having had a sexual encounter with him earlier that day.

Officer Gabrielle Purcellville of the Chesterfield County Police Department responded to Mclemore's residence for a report of an alleged assault. Based on observations of "swelling" on Mclemore's cheek, along with other information received from Mclemore, Purcellville was able to obtain a warrant against Bailey for assault and battery.

The Commonwealth rested its case in chief, and Bailey did not move to strike the evidence. Bailey then testified that he had known Mclemore for nearly two months and they texted each other "every day or every other day and she sent me a photo of herself." Eventually the relationship became intimate, including a sexual encounter on the day Mclemore claimed Bailey hit her. Bailey indicated that he was with her around 5:00 p.m. that afternoon and that she asked him to return at 9:00 p.m. the same evening. He returned, but to Tureke Diggs' apartment located across the hall from Mclemore's. Mclemore was at Diggs' apartment, but, according to Bailey, no argument took place. Bailey left the apartment and shortly thereafter received calls from both Diggs and police informing him that Mclemore claimed he struck her. Bailey returned to the apartment, but the police already had left. Bailey denied striking Mclemore.

The circuit court found Bailey guilty of misdemeanor assault and battery, then allowed counsel to proffer his understanding of the substance of the testimony that would have been given by the absent witnesses. Acknowledging that he had not spoken to either witness, counsel proffered that the first witness, Diggs, would have testified that he was present at the apartment and saw Bailey exit the apartment approximately ten minutes before Mclemore left the apartment. The second individual, Mr. Shaw, would have testified that he also was at the

apartment, and as he looked out the window, he watched Bailey leave the apartment, get into his car, and drive off. During this time, Mclemore was still inside the apartment. No additional details were proffered.

On January 8, 2020, the circuit court entered a conviction and sentencing order. The order memorialized the circuit court's finding of guilt, sentenced Bailey to twelve months in jail with nine of those months suspended for a period of three years, and ordered, among other things, that Bailey pay a $500 fine.

After entry of the order, Bailey retained new counsel, who filed a motion to reconsider on January 22, 2020. For the first time, Bailey asserted that his right to counsel under the Sixth Amendment was "hindered" by the circuit court's denial of his request for a continuance. "Through circumstances largely beyond his control, Mr. Bailey never received the assistance of counsel until very shortly before the day of his case's first calling in this [c]ourt." The circuit court scheduled a hearing on the motion for January 29, 2020. No order suspending, modifying, or vacating the circuit court's January 8, 2020 order was entered.

At the January 29, 2020 hearing, Bailey's counsel argued that Bailey's right to counsel generally and his right to counsel of his choice were violated by the denial of his motion to continue. From the bench, the circuit court informed the parties that the motion to reconsider was "respectfully denied." In explaining its rationale, the circuit court noted that, although it "zealously looks after the constitutional rights of a free citizen[,]" there is a correlative "responsibility of a free citizen to protect his own liberty" by taking the necessary steps to fully enjoy those rights. The circuit court explained that

> Bailey appealed [the case] on his own. He knew the date. He had four months, and then he waits until two days before the trial to hire counsel, that's not a denial of his constitutional rights.
>
> Counsel argues that he wants the ability to present a defense. He had that chance to present a defense. He had four

months to prepare. He had four months to hire a lawyer. If he couldn't afford one, he could have come in here and asked me to appoint him one. I mean, he had numerous options in order to have his day in court and to defend his liberty.

He chose not to.

The circuit court did not enter an order memorializing its oral ruling on the motion to reconsider that day. Rather, it entered an order on January 30, 2020, that purported to deny the motion to reconsider.

Bailey now appeals the judgment of the circuit court. He asserts that the circuit court erred both in "denying [his] motion for a continuance" and in denying "his subsequent motion to reconsider that denial[.]" Regarding the denial of his motion to reconsider, Bailey again asserts that the circuit court's denial effectively deprived him of his Sixth Amendment right to counsel.[3]

ANALYSIS

I. Standards of review

Bailey's appellate arguments raise distinct questions to which we apply different standards of review. Resolving his challenge to the circuit court's denial of his motion to reconsider requires us to address questions of jurisdiction and involves the interpretation of the Rules of Court.[4] Thus, our resolution of that argument turns on questions of law subject to *de novo* review. Minor v. Commonwealth, 66 Va. App. 728, 738-39 (2016). His challenge to the circuit court's denial of his initial motion to continue presents no such questions of law because whether to grant or deny "a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case." Haugen v. Shenandoah Valley

---

[3] Incidental to Bailey's argument, we note that neither Code § 19.2-159.1(B) nor our decision in London v. Commonwealth, 49 Va. App. 230 (2006), interpreting that code section is applicable to this case because Bailey was not indigent and never had counsel appointed for him.

[4] Given the nature of our resolution of Bailey's challenge to the circuit court's denial of his motion to reconsider, we address it first.

Dep't of Soc. Servs., 274 Va. 27, 34 (2007). Accordingly, we review that argument under the deferential "abuse of discretion" standard. Id.

## II. Jurisdiction and Bailey's motion to reconsider

As noted above, Bailey contends that the circuit court erred in denying his motion to reconsider its denial of the oral motion to continue he made on the morning of trial. In response, the Commonwealth argues that Bailey did not obtain a ruling of the circuit court on the motion to reconsider while the circuit court retained jurisdiction over the matter, and thus, there is no valid circuit court ruling on the motion to reconsider that we can review on appeal. We agree with the Commonwealth.

"The concept of jurisdiction defines power." Kelley v. Stamos, 285 Va. 68, 75 (2013). Absent jurisdiction, a court, whether trial or appellate, lacks the power to act, rendering orders entered in such circumstances legal nullities. As the Supreme Court has explained,

> [a]n order is void *ab initio* if entered by a court in the absence of jurisdiction of the subject matter or over the parties, if the character of the order is such that the court had no power to render it, or if the mode of procedure used by the court was one that the court could "not lawfully adopt."

Singh v. Mooney, 261 Va. 48, 51-52 (2001) (quoting Evans v. Smyth-Wythe Airport Comm'n, 255 Va. 69, 73 (1998)).

Here, there is no question that, initially, the circuit court had jurisdiction over the matter. Bailey came before the circuit court on an appeal of his misdemeanor conviction in the general district court. By statute, a circuit court has the power to try such cases. Riddick v. Commonwealth, 72 Va. App. 132, 144 (2020) (citing Code §§ 16.1-132 and 17.1-513). As such, the circuit court possessed subject matter jurisdiction. Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church, 296 Va. 42, 49 (2018).

Nevertheless, grants of jurisdiction to circuit courts come with an expiration date. Specifically, Rule 1:1 of the Rules of the Virginia Supreme Court, which bears the heading "*Expiration of Court's Jurisdiction*[,]" provides, in pertinent part, that

> All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer. . . . The date of entry of any final judgment, order, or decree is the date it is signed by the judge[.]

Rule 1:1(a).

There is no dispute that the circuit court's January 8, 2020 conviction and sentencing order constitutes the final order in the case for the purpose of Rule 1:1. Minor, 66 Va. App. at 740; see also Rule 1:1(b) (providing "a judgment, order or decree is final if it disposes of the entire matter before the court, . . . gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order or decree"). Thus, because none of the recognized exceptions to Rule 1:1 apply,[5] the circuit court last had jurisdiction over the matter on January 29, 2020, and was without authority to act after that date. Minor, 66 Va. App. at 740.

On January 29, 2020, the circuit court heard argument on Bailey's motion to reconsider and, at some length, stated both its denial of the motion and its reasons therefor from the bench. The circuit court, however, did not enter a written order memorializing that oral ruling until the next day, *twenty-two days after its entry of the final order*. As a result, the circuit court no longer had jurisdiction over the matter when it entered the written order. Rule 1:1(a).

---

[5] There are limited, specified exceptions to Rule 1:1's twenty-one-day rule. See, e.g., Minor, 66 Va. App. at 740-41 (recognizing Code § 8.01-428(B) and a court's inherent ability to correct the record by entry of an order *nunc pro tunc* as exceptions to the finality imposed by the operation of Rule 1:1). Neither exception applies here.

In determining whether a circuit court retains jurisdiction over a matter when it issues a ruling, the critical event is the circuit court's entry of a written order and not any pronouncements the circuit court may make from the bench. The Supreme Court repeatedly has emphasized that "a court speaks only through its written orders. And, orders speak as of the day they were entered." Wagner v. Shird, 257 Va. 584, 588 (1999) (internal quotation marks and citations omitted). As a result, the circuit court's oral ruling regarding Bailey's motion to reconsider is of no moment even though it occurred while the circuit court had jurisdiction.

Although a seemingly harsh result, binding Supreme Court precedent dictates this conclusion. For example, the Supreme Court addressed a nearly indistinguishable scenario in Wagner. Like Bailey, the losing litigant in Wagner filed a post-trial motion, the circuit court conducted a hearing on that motion, and the circuit court orally announced a ruling on the post-trial motion from the bench *while it retained jurisdiction over the matter*. Id. at 586. The circuit court, however, did not enter an order memorializing its oral ruling until after it lost jurisdiction pursuant to Rule 1:1. Id. The Supreme Court held that the failure of the circuit court to enter a written order while it retained jurisdiction rendered its ruling on the post-trial motion "a nullity." Id. at 588 (citing Davis v. Mullins, 251 Va. 141, 149 (1996)).

As Bailey does here, the losing litigant in Wagner argued that the fact that the circuit court had heard argument and announced a ruling from the bench while it retained jurisdiction was sufficient to prevent the fatal consequences of the written order having been entered after the circuit court's jurisdiction expired. The Supreme Court, while recognizing that "[t]here is a distinction between the *rendition* of a judgment and the *entry* of a judgment[,]" id. at 587 (quoting McDowell v. Dye, 193 Va. 390, 393 (1952)), expressly rejected the argument.[6]

_____

[6] At oral argument in this Court, the potential tension between cases holding that a circuit court speaks only through its written orders and cases that establish that an oral pronouncement constitutes the rendition of judgment by a circuit court was the subject of much discussion. As

- 9 -

Specifically, it held that "the fact that the circuit court had orally announced its decision" on the post-trial motion while it retained jurisdiction did not save the circuit court's decision from being a nullity when the order memorializing that decision was entered after the circuit court's jurisdiction had expired. Id.

To the extent that there were any doubts regarding the circuit court's order on Bailey's post-trial motion being a nullity, the Supreme Court's recent decision in Kosko v. Ramser, ___ Va. ___ (May 20, 2021), removes them. In Kosko, a litigant filed a post-trial motion, and the circuit court held a hearing on the motion "on the twentieth day after entry of the" final order. Id. at ___. At that hearing, the circuit court announced its ruling on the motion from the bench, but it did not enter an order memorializing its oral ruling until "more than twenty-one days after entry of the" final order. Id. at ___. Holding that its decision in "Wagner . . . supplies the rule of decision[,]" the Supreme Court reiterated that circuit court decisions memorialized in orders entered after the loss of jurisdiction are nullities, concluding that the circuit court's "order was

---

part of that discussion, it was noted that in Taylor v. Commonwealth, 58 Va. App. 435, 438 n.1 (2011), we stated that

> it is inconsequential that the trial court entered the written
> conviction order a few days after orally pronouncing Taylor guilty
> at the conclusion of the trial. "The rendition of a judgment must be
> distinguished from its entry on the court records. The rendition of a
> judgment duly pronounced is the judicial act of the court, and the
> entry or recording of the instrument memorializing the judgment
> does not constitute an integral part of, and should not be confused
> with, the judgment itself."

(quoting Jefferson v. Commonwealth, 269 Va. 136, 139 (2005)). These cases, however, do not dictate a different result here. Taylor is distinguishable from the instant case in that it did not address a scenario in which the circuit court entered a written order after it had lost jurisdiction pursuant to Rule 1:1. Jefferson is distinguishable because it involved a circuit court entering an order *nunc pro tunc*, pursuant to Code § 8.01-428(B), to correct an error in the order it had entered when it had jurisdiction. 269 Va. at 140. As noted above, *nunc pro tunc* orders are one of the few, recognized exceptions to the expiration of a circuit court's jurisdiction pursuant to Rule 1:1, none of which are applicable here. See, note 5, supra.

void because it was entered more than twenty-one days following entry of the" final order. Id. at

___.

Faithful application of Wagner and Kosko to the case before us requires us to conclude that the circuit court's January 30, 2020 written order and the ruling it purports to memorialize are legal nullities. Consequently, Bailey failed to obtain a ruling on the arguments raised for the first time in that motion, including his Sixth Amendment argument, leaving us with no decision of the circuit court on that issue to consider on appeal. See Williams v. Commonwealth, 57 Va. App. 341, 347 (2010) (concluding that a litigant's failure to obtain a ruling on a motion in the circuit court leaves the appellate court with nothing to review, and thus, waives any arguments raised in the motion); Fisher v. Commonwealth, 16 Va. App. 447, 454 (1993) (concluding that when a litigant fails "to obtain a ruling from the court[,]" he has been "denied nothing by the trial court," and therefore, "there is no ruling for us to review").[7]

### III. Bailey's initial motion to continue

Although we have no ruling of the circuit court to review with respect to Bailey's assignment of error presenting the arguments Bailey raised for the first time in his motion to reconsider, we are able to address his challenge to the circuit court's denial of the motion to continue he made on the morning of trial. He asserts that the arguments raised that morning in support of his motion to continue were sufficient to require the circuit court to grant him a continuance.

---

[7] We take this opportunity to note that litigants pursuing motions to reconsider in circuit courts are well advised to seek the protection of the safe harbor provided by Rule 1:1. Specifically, Rule 1:1(a) allows a circuit court to forestall the expiration of its jurisdiction by entering an order that modifies, vacates, or suspends the previously entered final order. So long as such a suspending order is entered in the twenty-one-day period, the circuit court retains jurisdiction to allow it additional time to entertain the motion to reconsider.

A party challenging a circuit court's denial of a motion for a continuance must demonstrate both an "abuse of discretion *and* resulting prejudice[.]" Haugen, 274 Va. at 34. Bailey asserts that his stated reason, that his recently hired counsel needed additional time to secure the appearance of missing witnesses, satisfies both prongs of the test. We disagree.

A. Abuse of discretion

The abuse of discretion standard "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Hamad v. Hamad, 61 Va. App. 593, 607 (2013). It necessarily presumes that "for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts – yet still remain entirely reasonable." Thomas v. Commonwealth, 62 Va. App. 104, 111 (2013). It requires an appellate court to "show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." Lawlor v. Commonwealth, 285 Va. 187, 212 (2013) (quoting Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008)). Accordingly, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." Grattan v. Commonwealth, 278 Va. 602, 620 (2009) (quoting Beck v. Commonwealth, 253 Va. 373, 385 (1997)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005).

Here, we cannot say that the circuit court abused its discretion. Bailey had more than four months to prepare for trial, retain an attorney, and secure the attendance of any desired witnesses. The notice of appeal Bailey signed specifically instructed him that he "*MUST be present and ready for trial*" on January 3, 2020. (Emphasis added). Regarding securing the attendance of witnesses and obtaining the assistance of counsel, the very same notice advised

- 12 -

Bailey to "communicate with the Clerk of the Circuit Court . . . concerning the subpoenaing of witnesses" and "concerning your right of representation by a lawyer if you do not have a lawyer[.]"

Rather than follow the instructions he had been given and of which he was aware, Bailey never communicated with the clerk and waited until days before trial to secure counsel. Based on the record before us, neither Bailey nor his counsel made any effort to secure the attendance of the supposedly needed witnesses. Furthermore, it does not appear that either Bailey or his counsel advised the Commonwealth, the circuit court, or the clerk that he would be requesting a continuance prior to the morning of trial. The record contains no written motion; it appears that Bailey appeared at trial and made an oral motion that morning with the Commonwealth having fully prepared for trial and its witnesses being present.

Given the foregoing, we cannot say that the circuit court abused its discretion in denying Bailey's motion for a continuance. Although a reasonable jurist could have granted Bailey a continuance under these circumstances, the circuit court's denial of the motion falls within the "bell-shaped curve of reasonability[,]" Du v. Commonwealth, 292 Va. 555, 564 (2016) (quoting Sauder v. Ferguson, 289 Va. 449, 459 (2015)), that defines a permissible exercise of discretion.

### B. Prejudice

Even if we were to conclude that no reasonable jurist would have denied the continuance request, the record before us fails to demonstrate the prejudice necessary to establish reversible error. Accepting counsel's proffer of his understanding of what the two witnesses, with whom he had never spoken, was accurate, the proffer simply does not negate the Commonwealth's evidence. Counsel's proffer of the witness testimony was that, at some unspecified time on the day in question, the two potential witnesses saw Bailey leave the apartment before the victim did. There was no representation that the witnesses were present at the time of the incident or

that either observed all of the interactions between Bailey and the victim in the apartment. In fact, it was not even proffered that either witness would or could testify that Bailey did not assault the victim. Given that the proffer did not negate the Commonwealth's evidence, Bailey cannot establish that he was prejudiced by the denial of a continuance to allow him to obtain the proffered testimony.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

<u>Affirmed.</u>